# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JAMES FLAVY COY BROWN,<br><br>Plaintiff(s),<br><br>v.<br><br>SOUTHERN NEVADA ADULT<br>MENTAL HEALTH SERVICES,<br><br>Defendant(s). | 2:13-CV-1039 JCM (PAL) |

**ORDER**

Presently before the court is defendants Southern Nevada Adult Mental Health Services, Chelsea Szklany, Mike Willden, Richard Whitley, Leon Ravin, Anurag Gupta, and Kyle Devine's ("state defendants") motion to dismiss. (Doc. # 47). Plaintiff James Flavy Coy Brown filed an opposition (doc. # 49), and state defendants filed a reply (doc. # 49).

Also before the court is a motion to dismiss filed by defendant Linda J. White. (Doc. # 51). Plaintiff filed an opposition to this motion. (Doc. # 53). Because this motion incorporates the arguments contained in state defendants' motion to dismiss, the court need not discuss it in the instant order and it will be denied as moot.

Also before the court is defendants' prior motion to dismiss. (Doc. # 10). After this motion was filed, plaintiff filed an amended complaint, (doc. # 44), and thus that motion will be denied as moot.

. . .

**James C. Mahan**
**U.S. District Judge**

## I. Background

This case revolves around allegations that plaintiff and other similarly situated former patients at Rawson-Neal Psychiatric Hospital ("Rawson-Neal") were involuntarily discharged by defendants and instructed to travel out-of-state destinations where defendants allegedly knew they would be unable to obtain proper treatment, care, and housing. Plaintiff and the class he seeks to represent were allegedly given anti-psychotic medication before they were discharged from the facility.

Allegedly Rawson-Neal staff physically escorted defendant and other patients from the facility to waiting taxis bound for the Greyhound Bus Station in Las Vegas, Nevada. They were directed to travel on pre-paid tickets which had been previously ordered and paid for by defendant Southern Nevada Adult Mental Health Services ("SNAMHS").

Specifically, plaintiff claims that he was admitted to Rawson-Neal on February 9, 2013, due to psychosis and suicidal thoughts. The staff at Rawson-Neal cared for plaintiff for approximately two days, during which they administered Thorazine, Cymbalta, and Klonopin. On February 11, 2013, the staff discharged plaintiff involuntarily, physically escorted him from the facility, and took him to a taxi which transported him to the Greyhound bus station.

Prior to his discharge, the staff allegedly gave plaintiff a pre-paid ticket to Sacramento, California, and instructed him to travel there but did not make arrangements for psychiatric care or secure assistance of any kind upon his arrival. The staff is also alleged to have given plaintiff enough medication to last for the approximately fifteen-hour bus ride.

After plaintiff arrived in Sacramento, he was taken by the police to a local homeless service center, which could provide no housing, medical treatment, or transportation. He was then directed to the University of California at Davis Medical Center's emergency department which, after three days, arranged for plaintiff to be treated at a local psychiatric facility. From there he was discharged to a group home in Sacramento.

Plaintiff now claims that defendants' conduct violated the Eighth, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiff also argues that these actions by defendants

**James C. Mahan**
**U.S. District Judge**

violated Title II of the Americans with Disabilities Act and constituted "patient dumping" under 42 U.S.C. § 1395dd. Plaintiff also asserts claims of negligence, professional negligence, malpractice, negligent hiring, and breach of fiduciary duty under Nevada state law.

In the instant motion, defendants request that the court dismiss all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  Legal standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.*

(internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### III. Discussion

#### a. Constitutional claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citation omitted).

#### 1. Cruel and unusual punishment

In his first claim, plaintiff alleges a violation of the Eight Amendment guarantee against cruel and unusual punishment. However, the Eighth Amendment applies "only after the [s]tate has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he [s]tate does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 671–672, n. 40 (1977).

Plaintiff argues that the court should take an unprecedented view of the requirements of the Eighth Amendment, putting forward the perspective that the Rawson-Neal staff "banished" plaintiff by discharging him involuntarily. Indeed, this view stretches the Eighth Amendment beyond its previously recognized limits, and would effectively require hospitals to indefinitely provide free care

to all patients to avoid "punishing" them by forcing them out into the harsh existence of the real world.

The court refuses to adopt such a view, and instead will adhere to clearly established precedent holding that the Eighth Amendment applies only to criminal punishments or directly analogous state conduct. *See id.* at 669. Therefore, the court will dismiss plaintiff's Eighth Amendment claim without prejudice.

### 2. Unreasonable seizure

In the second claim, plaintiff alleges a violation of the Fourth Amendment's right against unreasonable "seizure" due to defendants' actions of discharging plaintiff, escorting him to a taxi, and arranging for him to travel to Sacramento. To establish a that a "seizure" has occurred pursuant to the Fourth Amendment, a plaintiff must allege that he was (1) subjected to a use of physical force or a demonstration of state authority and (2) that he reasonably believed he was not free to leave. *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

In this case, plaintiff fails to show that defendants utilized physical force or a demonstration of authority by providing him with transportation to Sacramento. The cases cited by plaintiff address circumstances in which individuals were subjected to direct commands from individuals bearing the coercive power of the state, including police officers, *Terry v. Ohio*, 392 U.S. 1 (1968), teachers, *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364 (2009), and social workers, *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007).

In the instant case, the coercive power of the state was not imposed upon plaintiff. There is no allegation that plaintiff was threatened with punishment if he did not travel to Sacramento. Indeed, the complaint does not even allege that anyone from Rawson-Neal accompanied plaintiff to the bus station.

Accordingly, because there was no direct command from an individual bearing state coercive authority, nor threat of punishment if plaintiff did not comply, the court finds that neither of the criteria for a seizure are met in this case. Accordingly, plaintiff's Fourth Amendment claim will be dismissed without prejudice.

James C. Mahan
U.S. District Judge

- 5 -

### 3. Equal protection

Plaintiff argues that state defendants violated the Equal Protection Clause of the Fourteenth Amendment by discharging him and instructing him to travel out of state based on his status as an indigent patient.

Because plaintiff does not allege that state defendants' conduct was based on his status as a member of a "protected class," the minimal, "rational basis" level of scrutiny applies to this claim. *See Village of Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000).

"In rational-basis review, a statutory classification . . . comes before the [c]ourt bearing a strong presumption of validity, and those attacking its rationality have the burden to negate every conceivable basis that might support it. Since a [state actor] need not articulate its reasons for enacting a [policy], it is entirely irrelevant for constitutional purposes whether the [state actor] was actually motivated by the conceived reason for the challenged distinction. [Such choices are] not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 308 (1993).

Applied to this case, it is not irrational that state defendants would develop policies that make distinctions in the way they treat patients based on the patient's economic status. Indeed, state defendants point out that these policies exist to ensure "that Clark County or Washoe County are not billed for the medical care of indigent patients simply because the psychiatric hospital is located within their respective counties." (Doc. # 47 p. 10).

Making policy distinctions in order to best allocate scarce financial resources certainly stands as a rational basis to support the discharge policy at issue in this case. Indeed, it is one of the key functions of government to decide how to best allocate public resources and to tailor its policies to best serve its citizens. Because plaintiff makes no allegation that state defendants' asserted justification is insufficient to meet the rational basis standard, this claim will be dismissed without prejudice.

. . .

. . .

James C. Mahan
U.S. District Judge

- 6 -

**4. Procedural due process**

"Procedural due process provides a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by the government." *Denney v. Drug Enforcement Admin.,* 508 F. Supp. 2d 815, 833 (E.D.Cal. 2007). In his complaint, plaintiff alleges that he was entitled to notice and a hearing to challenge his discharge from hospital and "compelled out-of-state transport." However, plaintiff points to no authority to support the proposition patients are entitled to a hearing prior to being discharged from medical facilities.

Plaintiff cites to cases holding that individuals have a right to safe conditions when they are forcibly confined by the state. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). However, this principle is inapplicable in this case, as plaintiff's arguments pertain to the events surrounding his release and do not include assertions that plaintiff was confined by the state and forced into unsafe conditions.

Plaintiff also argues that he had a property interest in his presence at the hospital due to a state policy providing that indigent residents are to be discharged to their county of last residence. *See* Nev. Rev. Stat. § 433A.400. However, plaintiff tries to imply that every statutory provision confers an entitlement upon affected individuals. Indeed, the court has frequently recognized that just because a statute contains mandatory language for government officials, it does not necessarily create a property interest for affected groups. *See Town of Castle Rock v. Gonzales,* 545 U.S. 748, 764-65 (2005) (Colorado law mandating that police "shall use" every reasonable means to enforce a restraining order did not create personal entitlement to police enforcement of a restraining order).

Therefore, simply because the Nevada legislature established a regulatory scheme requiring that certain indigent individuals be transported to their county of origin does not mean that plaintiff had a property interest in the precise application of those provisions. As discussed earlier, these provisions were clearly intended to allocate the scarce healthcare resources of certain counties in Nevada, not to confer property rights upon every patient in a Nevada hospital.

. . .

. . .

Accordingly, plaintiff's complaint fails to show that he was deprived of liberty or a property interest without due process. Thus, plaintiff's procedural due process claim will be dismissed without prejudice.

**5. Substantive due process**

The Supreme Court has described the "fundamental" rights protected by substantive due process as "those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment." *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997).

Those rights are few, and include "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).

Plaintiff argues his substantive due process rights were violated by state defendants "forcing" him to travel outside the state. However, this proposition is nonsensical. Plaintiff's complaint does not establish that he was *compelled* to leave the state, merely that defendants gave him the resources by which to do so.

Plaintiff also cites to *Kennedy v. City of Ridgefield*, which provides a violation of an individual's substantive due process rights can occur when, due to state action, that individual is placed in a dangerous situation that he would not otherwise have faced. *See* 439 F.3d 1055 (9th Cir. 2006). In *Kennedy*, the court held that a police officer violated substantive due process when he informed a criminal suspect that a neighbor had accused him of a crime. The officer was then held liable for failing to protect the accuser when the suspect broke into her house and killed her husband the next day.

. . .

. . .

- 8 -

James C. Mahan
U.S. District Judge

Another landmark case in this line of doctrine is *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989). In that case, a police officer determined that the driver of an automobile was intoxicated and arrested the driver and impounded his car. Due to the officer's actions, a female passenger of the car was left stranded in a high crime area. The *Wood* court held that the officer was liable under § 1983 when she was subsequently raped, because the officer had created the initial danger and demonstrated deliberate indifference by failing to remove her from it.

Unlike the circumstances in *Kennedy* and *Wood*, plaintiff makes no allegation that state defendants *caused* plaintiff to be in a dangerous situation. Indeed, before plaintiff was admitted to Rawson-Neal he was homeless and in need of psychiatric care. He was provided with care and given medication for a short time at the facility, then he was discharged and given a voucher to transport himself to Sacramento.

Homeless individuals with mental illness certainly face countless dangers on a day-to-day basis, but the complaint makes it very clear that plaintiff faced these dangers *prior to* any interaction with state defendants. Therefore, because the danger that plaintiff found himself in was not created by state defendants, there can be no due process violation under a theory of state-created danger.

For this reason, plaintiff's substantive due process claim will be dismissed without prejudice.

**b. Federal statutory claims**

**1. Americans with Disabilities Act claim**

To state a claim of disability discrimination under Title II of the Americans with Disabilities Act, a plaintiff must allege that "(1) [H]e 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'" *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), *cert denied*, 538 U.S. 921 (2003)).

. . .

. . .

James C. Mahan
U.S. District Judge

- 9 -

1  In other words, a plaintiff is not qualified to bring at Title II claim unless he "meets the essential eligibility requirements of a government service, program or activity provided by a public entity." *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1175 (9th Cir. 1999). In his second amended complaint, plaintiff does not describe the benefit that he alleges that he was eligible for or that he was excluded from due to his disability. Plaintiff has stated that he was denied medical care by Rawson-Neal, but he identifies his status as indigent, rather than disabled, as the reason for his discharge. Accordingly, this claim will be dismissed without prejudice.

### 2. Emergency Medical Treatment and Active Labor Act ("EMTALA") claim

Under EMTALA, a hospital emergency room has a duty to screen a patient for an emergency medical condition and if one is found, a duty to stabilize the patient before a transfer or discharge. 42 USC § 1395dd.

Pursuant to 42 USC § 1395dd(d)(2)(a):

> An individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section, may in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the [s]tate in which the hospital is located, and such equitable relief as is appropriate.

An emergency medical condition is defined as acute symptoms of sufficient severity that the health of the individual would be reasonably expected to be in serious jeopardy without immediate medical attention. 42 USC § 1395dd(e)(1)(a). "The Health Care Financing Administration ("HCFA") has interpreted an emergency medical condition in the psychiatric context to mean that an individual poses a danger to himself or others." *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 992 n.1 (9th Cir. 2001).

While plaintiff does claim that he suffered from an emergency medical condition during the time he was admitted to Rawson-Neal, and also argues that plaintiff failed to properly "stabilize" and "transport" him, plaintiff's claim under this statutory provision is insufficient because he fails to articulate that he suffered any "personal harm" as a direct result of state defendants' failure to comply with this section. Indeed, plaintiff's account indicates that defendant gave him enough

James C. Mahan
U.S. District Judge

- 10 -

medication to last for the entire trip to Sacramento, and that shortly after he arrived, he was treated at the University of California at Davis Medical Center. Accordingly, plaintiff's EMTALA claim will be dismissed without prejudice.

**c. Nevada statutory claims**

As the court is dismissing all of plaintiff's claims arising under the Constitution and laws of the United States, it is doubtful that the court has jurisdiction to hear the claims arising purely under Nevada state law. Accordingly, the court shall decline to rule regarding these claims at this time. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [arising under state law] if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that state defendants' motion to dismiss (doc. # 47) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's constitutional and federal statutory claims (claims 1-7) are DISMISSED WITHOUT PREJUDICE as to all defendants.

IT IS FURTHER ORDERED that the motion to dismiss filed individually by defendant Linda J. White (doc. # 51) is DENIED as moot.

IT IS FURTHER ORDERED that defendants' initial motion to dismiss (doc. # 10) is DENIED as moot.

DATED February 12, 2014.

*[signature]*
UNITED STATES DISTRICT JUDGE