**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAMES FLAVY COY BROWN,

    Plaintiff(s),

v.

SOUTHERN NEVADA ADULT
MENTAL HEALTH SERVICES,

    Defendant(s).

2:13-CV-1039 JCM (PAL)

**ORDER**

    Presently before the court is a motion for reconsideration filed by plaintiff James Flavy Coy Brown. (Doc. # 56). Defendants filed a response in opposition, (doc. # 58), and plaintiff filed a reply, (doc. # 60).

**I.    Background**

    This case revolves around allegations that plaintiff and other similarly situated former patients at Rawson-Neal Psychiatric Hospital ("Rawson-Neal") were involuntarily discharged by defendants and instructed to travel to out-of-state destinations where defendants allegedly knew they would be unable to obtain proper treatment, care, and housing. Plaintiff and the class he seeks to represent were allegedly given anti-psychotic medication before they were discharged from the facility.

    Allegedly, Rawson-Neal staff physically escorted defendant and other patients from the facility to waiting taxis bound for the Greyhound Bus Station in Las Vegas, Nevada. They were

**James C. Mahan**
**U.S. District Judge**

directed to travel on pre-paid tickets which had been provided by defendant Southern Nevada Adult Mental Health Services ("SNAMHS").

Specifically, plaintiff claims that he was admitted to Rawson-Neal on February 9, 2013, due to psychosis and suicidal thoughts. The staff at Rawson-Neal cared for plaintiff for approximately two days, during which they administered Thorazine, Cymbalta, and Klonopin. On February 11, 2013, the staff discharged plaintiff involuntarily, physically escorted him from the facility, and took him to a taxi which transported him to the Greyhound bus station.

Prior to his discharge, the staff allegedly gave plaintiff a pre-paid ticket to Sacramento, California, and instructed him to travel there but did not make arrangements for psychiatric care or secure assistance of any kind upon his arrival. The staff is also alleged to have given plaintiff enough medication to last for the approximately fifteen-hour bus ride.

After plaintiff arrived in Sacramento, he was taken by the police to a local homeless service center, which could provide no housing, medical treatment, or transportation. He was then directed to the University of California at Davis Medical Center's emergency department which, after three days, arranged for plaintiff to be treated at a local psychiatric facility. From there he was discharged to a group home in Sacramento.

On February 13, 2014, the court dismissed plaintiff's constitutional and federal-statutory claims without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and declined to exercise jurisdiction over the remaining claims arising under Nevada state law. (Doc. # 54). Plaintiff now requests that the court reconsider its dismissal of the constitutional and federal-statutory claims in this matter.

**II.    Legal standard**

Plaintiff appears to be moving under Fed. R. Civ. P. 59(e). But the court does not find application of Fed. R. Civ. P. 59(e) appropriate here. The court's order was not a judgment. It did not dismiss any of plaintiff's claims with prejudice. The court, in fairness, construes the motion as a motion to reconsider pursuant to Fed. R. Civ. P. 54(b).

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

Fed. R. Civ. P. 54(b) provides that any interlocutory order "may be revised at any time before the entry of a judgment adjudicating all claims and all the parties' rights and liabilities." Accordingly, "[w]here reconsideration of a non-final order is sought, the court has inherent jurisdiction to modify, alter or revoke it." *Goodman v. Platinum Condo. Dev., LLC*, 2012 WL 1190827, at *1 (D. Nev. 2012); *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."); *United States v. Martin,* 226 F.3d 1042, 1049 (9th Cir. 2000); *Glavor v. Shearson Lehman Hutton, Inc.,* 879 F.Supp. 1028, 1032 (N.D. Cal. 1994) ("District courts are authorized to reconsider interlocutory orders at any time prior to final judgment.").

"Reconsideration may be appropriate if a district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there has been an intervening change in controlling law." *Rich v. TASER Int'l, Inc.*, 917 F. Supp. 2d 1092, 1094 (D. Nev. 2013); *see also Nunes v. Ashcroft,* 375 F.3d 805, 807–08 (9th Cir. 2004); *School Dist. No. IJ, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied*, 512 U.S. 1236 (1994).

While a motion for reconsideration allows a party to bring a material oversight to the court's attention, it is not appropriate for a party to request reconsideration merely to force the court to "think about [an] issue again in the hope that [it] will come out the other way the second time." *Teller v. Dogge*, 2013 WL 508326, at *6 n. 6 (D. Nev. 2013); *see also Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006).

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

### III. Discussion

#### a. Constitutional claims

##### 1. Cruel and unusual punishment

Plaintiff argues that the court committed clear error by dismissing his claim that defendants violated his rights under the Eighth Amendment. In its dismissal order, the court noted that the Eighth Amendment is implicated only in cases in which an individual has been subjected to criminal punishment or directly analogous state conduct. Because this case does not address an instance in which plaintiff was subjected to a formal adjudication of guilt in accordance with due process of law, his allegations did not adequately state a claim for a violation of the Eighth Amendment.

Plaintiff argues that the Supreme Court's holding in *Ingraham v. Wright*, 430 U.S. 651 (1977), shows that the dismissal was contrary to law. In this decision, the Court stated, in dicta, "We have no occasion in this case . . . to consider whether or under what circumstances persons involuntarily confined in mental or juvenile institutions can claim the protection of the Eighth Amendment." *Ingraham*, 430 U.S. at 669 n. 37.

Thus, the court declined to extend the rights provided under the Eighth Amendment to individuals confined in mental institutions. Furthermore, plaintiff's allegations revolve around the *release* of individuals from a mental health institution rather than their *confinement*.

Additionally, the court reiterates that plaintiff's reading of the Eighth Amendment would place an unbearable burden upon every hospital to provide a limitless amount of free care rather than "banish" patients into the real world outside the confines of the institution. Clearly, the Constitution does not require such a bizarre and untenable result.

Accordingly, the court finds that its decision to dismiss plaintiff's Eighth Amendment claim was neither clearly erroneous nor contrary to law.

##### 2. Unreasonable seizure

Plaintiff argues that the court erred by failing to consider plaintiff's degree of mental illness prior to dismissing his claim that he was unreasonably seized in violation of the Fourth Amendment. However, plaintiff's argument disregards the applicable standard for an unreasonable seizure claim.

James C. Mahan
U.S. District Judge

- 4 -

1  To establish a that a "seizure" has occurred pursuant to the Fourth Amendment, a plaintiff must
2  allege that he was (1) *subjected to a use of physical force or a demonstration of state authority* and
3  (2) that he reasonably believed he was not free to leave. *California v. Hodari D.*, 499 U.S. 621, 628
4  (1991) (emphasis added).

5  Under this standard, the use of state coercive authority is a necessary component of an
6  unreasonable seizure claim regardless of a plaintiff's mental state. Because there is no allegation that
7  plaintiff was threatened with punishment or was otherwise forced to travel to Sacramento, plaintiff
8  failed to state a cognizable claim under the Fourth Amendment.

9  Accordingly, the court finds that its decision to dismiss plaintiff's Fourth Amendment claim
10  was neither clearly erroneous nor contrary to law.

11  **3. Equal protection**

12  Plaintiff argues that the court erred in dismissing his claim that defendant violated the Equal
13  Protection Clause of the Fourteenth Amendment because the burden should fall upon defendants to
14  show that their policies were not motivated by "'animus' towards the indigent . . . ." (Doc. # 56-1
15  p. 24). With this argument, plaintiff disregards the minimal burden defendants face within rational
16  basis review.

17  "In rational-basis review, a statutory classification . . . comes before the [c]ourt bearing a
18  strong presumption of validity, and those attacking its rationality have the burden to negate every
19  conceivable basis that might support it." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 308 (1993).
20  The court must uphold a policy if a permissible justification is found to exist without requiring a
21  showing that the actor was motivated by or even considered that justification. *See id.* Whether a
22  proffered justification meets the rational basis standard is "not subject to courtroom fact-finding and
23  *may be based on rational speculation unsupported by evidence or empirical data.*" *Id.* (emphasis
24  added).

25  Plaintiff cites *City of Cleburne v. Cleburne Living Center* for the proposition that a state
26  policy or classification must fail rational basis review when it is when it is shown that the policy was
27  not relevant to the state's interest, but was instead motivated by animus toward an unpopular group.

28

James C. Mahan
U.S. District Judge

- 5 -

473 U.S. 432, 441 (1985); *see also Romer v. Evans*, 517 U.S. 620, (1996).

Even so, plaintiff's equal protection claim does not give rise to a plausible inference that defendants were motivated by animosity toward the plaintiff.

Accordingly, the court finds that its decision to dismiss plaintiff's equal protection claim was neither clearly erroneous nor contrary to law.

### 4. Procedural due process

As to plaintiff's procedural due process claim, plaintiff continues to argue that he was entitled to a hearing prior to his release from Rawson-Neal, citing authorities relating to the rights of individuals who are forcibly *confined* by the state. Because plaintiff cites to no authority indicating that an individual has a right to a hearing or notice prior to being *released* from state custody, the court finds that dismissal of this claim was warranted.

Plaintiff also argues that the court erred by not finding that plaintiff had a property interest in his presence at the hospital due to various procedural regulations as to how hospitals are to carry out discharges. *See* Nev. Rev. Stat. §§ 433A.400 & 433.314; 42 C.F.R. §§ 482.43 & 489.24(e). Plaintiff fails to acknowledge, however, that the court has frequently recognized that statutes containing mandatory language for government officials do not necessarily create a property interest for affected groups. *See Town of Castle Rock v. Gonzales,* 545 U.S. 748, 764-65 (2005) (Colorado law mandating that police "shall use" every reasonable means to enforce a restraining order did not create personal entitlement to police enforcement of a restraining order).

Therefore, plaintiff fails to show any error in the court's finding that these provisions do not confer a property right upon hospital patients.

Accordingly, the court finds that its decision to dismiss plaintiff's Fourteenth Amendment procedural due process claim was neither clearly erroneous nor contrary to law.

### 5. Substantive due process

As to plaintiff's substantive due process claim, plaintiff takes issue with the court's finding that his allegations that he was "compelled" to leave the state of Nevada were not plausible. In determining whether a claim is sufficient to withstand a motion to dismiss, the court is not required

James C. Mahan
U.S. District Judge

- 6 -

to blindly accept allegations which defy common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

According to the complaint, though plaintiff was not accompanied to the bus station by Rawson-Neal staff or any of the other defendants in this matter, his choice to use his pre-paid bus ticket to travel to Sacramento was somehow "compelled" by defendants. Within plaintiff's narrative, there is nothing that any of the defendants could have done to prevent plaintiff from throwing his bus ticket in the nearest trash can, walking away from the bus station, and remaining in Las Vegas.

It is for a similar reason that the court also dismissed plaintiff's "special relationship" substantive due process claim. Plaintiff cites *Ammons v. Washington Dept. of Social and Health Services*, 648 F.3d 1020 (9th Cir. 2011), for the proposition that hospital staffs owe a higher duty of care to involuntarily committed patients than prison officials owe to prisoners. However, this precedent is inapplicable to the instant case, as plaintiff's allegations address circumstances which developed after plaintiff was discharged from defendants' care rather than the conditions of the Rawson-Neal facility itself.

Plaintiff's "state-created danger" theory fails as well because the fact that he was not compelled by state officials to board the bus indicates that the dangers he faced were not created by defendants.

Accordingly, the court finds that its decision to dismiss plaintiff's substantive due process claim was neither clearly erroneous nor contrary to law.

**b. Federal statutory claims**

**1. Americans with Disabilities Act claim**

The court finds that it correctly dismissed plaintiff's claim for discrimination in violation of Title II of the Americans with Disabilities Act. To adequately plead such a claim, a plaintiff must plausibly state that the denial of a benefit occurred because of a disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), *cert denied*, 538 U.S. 921 (2003)). In this case, plaintiff's claims revolve around the notion that defendants' actions were motivated by his indigency rather than his mental

illness. In other words, plaintiff's complaint fails to allege or raise a plausible inference that disabled patients who were not indigent were treated in the same way.

Accordingly, the court finds that its decision to dismiss plaintiff's Americans with Disabilities Act claim was neither clearly erroneous nor contrary to law.

**2. Emergency Medical Treatment and Active Labor Act ("EMTALA") claim**

The court finds that it committed no error in dismissing plaintiff's EMTALA claim. EMTALA imposes a duty upon some hospital emergency rooms to screen patients for emergency medical conditions and stabilize them prior to transfer or discharge. 42 USC § 1395dd. EMTALA further provides, "An individual who *suffers personal harm* as a direct result of a participating hospital's violation of a requirement of this section, may [raise] a civil action against the participating hospital . . . ." 42 USC § 1395dd(d)(2)(a) (emphasis added).

While the complaint clearly alleges that plaintiff faced *potential* danger due to defendants' actions, it is devoid of particularized allegations showing that he actually suffered any harm. Indeed, taking plaintiff's allegations as true, it is apparent only that he arrived in Sacramento in a confused state and that same day was sent to the UC Davis medical center, which transferred him to the Heritage Oaks psychiatric facility approximately seventy-two hours later.

Any injury plaintiff may have suffered during the course of these events, if any, is not apparent from the face of the complaint. While plaintiff's factual allegations establish that there was a high potential for harm to occur, plaintiff cannot recover based on risks that never actually materialized.[1] Therefore plaintiff has failed to adequately state a claim demonstrating that he is entitled to relief.

Accordingly, the court finds that its decision to dismiss plaintiff's EMTALA claim was neither clearly erroneous nor contrary to law.

Finally, in light of the fact that plaintiff's constitutional and federal-statutory claims were dismissed without prejudice, plaintiff may file a motion to amend his complaint within fourteen days

---

[1] Plaintiff also alleges that other Rawson-Neal patients suffered very clear injuries due to similar actions by defendants: "Many prior patients discharged and subjected to 'Greyhound therapy' . . . committed suicide." (Doc. # 44 p. 6). However, allegations of injuries suffered by others do not establish that plaintiff is, himself, entitled to relief.

**James C. Mahan**
**U.S. District Judge**

- 8 -

of the entry of this order.

**IV.    Conclusion**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for reconsideration, (doc. # 56), be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff, if he chooses to amend his complaint, file a motion to amend within fourteen (14) days of the entry of this order. The court reminds plaintiff that if he seeks to amend his complaint, he must comply with the local rules of this court.

DATED June 20, 2014.

_/s/ James C. Mahan_
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 9 -